THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DONALD L. SOUTHERLAND and
DENISE I. GONZALEZ, as Co-
Personal Representatives of the Estate
of NEIL D. SOUTHERLAND, Deceased,

    Plaintiffs,

vs.                                          Case No.: 3:11 cv 01193 J-37 JBT

JIM T. CAREY; JOHN RUTHERFORD,
in his official capacity as Sheriff of Duval
County, Florida; and CITY OF JACKSONVILLE,
a political subdivision of the State of Florida,

    Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANTS' *DAUBERT* MOTION
TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERT (MEL TUCKER)
(DOC. 21)**

      Defendants' Motion to Exclude Testimony of Plaintiffs' Expert, Mel Tucker, (Doc. 21) should be denied. Mr. Tucker is an imminently qualified expert, he used reliable methodology in reaching his opinions and his opinions will assist the trier of fact in this matter.

      Defendants attached only a partial copy of the report of Mel Tucker with their Motion to Exclude. A complete copy of the Report of Mel Tucker with all exhibits is filed concurrently with this Response.

      Preliminarily, the Defendants have chosen not to take the deposition of Mr. Tucker. Instead, Defendants rely only on the report of Mr. Tucker. Plaintiffs' submit the affidavit of Mr.

Tucker which specifically addresses the issues raised in Defendants' Motion. A copy of the Affidavit with exhibits is attached as an Exhibit to this Response.

## I.     Legal Standard

District Courts must act as "gatekeepers," admitting expert testimony only if it is both reliable and relevant, to prevent speculative and unreliable testimony from reaching the jury. Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir.2005). This Court must consider whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562–63 (11th Cir.1998). The party offering the expert bears the burden of satisfying each of the three elements by a preponderance of the evidence. Rink, 400 F.3d at 1292.

Regarding the second criterion, "[t]o assess the reliability of an expert opinion, the court considers a number of factors, including those listed by the Supreme Court in *Daubert*:

> (1) whether the expert's theory can be or has been tested;
>
> (2) whether the theory has been subject to peer review and publication;
>
> (3) the known or potential rate of error of the particular scientific technique; and
>
> (4) whether the technique is generally accepted in the scientific community."

United States v. Abreu, 406 F.3d 1304, 1306–07 (11th Cir.2005) (quoting United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir.2004)). However, these listed factors "are only

illustrative and may not all apply in every case." <u>Id</u>. at 1307. In any event, "[t]he district court has wide latitude in deciding how to determine reliability." Id. Regarding the third criterion, whether the expert testimony will be helpful,

> [t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

12 Fed.R.Evid. 702, Advisory Committee Notes (internal citation and quotation marks omitted.)

## II. Expert's Qualifications

Defendants do not dispute or question Mr. Tucker's Qualifications as an Expert. Attached to his report and to Mr. Tucker's Affidavit is a copy of his current Curriculum Vitae.

## III. The Reliability of Methodology

The Defendants have not taken the deposition of Mr. Tucker. Therefore, Mr. Tucker has submitted an Affidavit to address several of the issues in the Motion to Disqualify and to answer, with specificity, the types of questions that typically would be asked at a deposition of an expert when challenging an expert's opinion.

Defendants spend significant time claiming to challenge the "methodology" of Mr. Tucker. However an examination of the argument reveals Defendants simply disagree with what weight Mr. Tucker gives the disputed evidence and the conclusions of Mr. Tucker when analyzing the disputed facts of this case. The logic of Defendants, and their conclusions that the evidence is undisputed and impossible of differing inferences, is repeated in Defendants' Motions for Summary Judgment. However, the facts are disputed as this will be pointed out in Plaintiffs' response to the Motions for Summary Judgment.

3

As is shown in the affidavit and Mr. Tucker's report, he clearly understood that a vehicle can be used as a deadly weapon. However, that conclusory fact does not end the analysis for this case. One of the primary issues in this case is whether it was reasonable for Sgt. Carey (who alone shot and killed Neil Southerland) to believe Neil Southerland, at the time of the shooting, posed an immediate threat of serious physical harm to anyone.

Defendants also seem to disagree with the legal standard for analyzing whether a reasonable officer could perceive to be under the threat of immediate harm. Mr. Tucker applies the proper legal standard objective reasonableness for making this analysis. In order to properly apply an objective reasonableness standard one has to consider all the actual facts surrounding the shooting.

Defendants also address the "irrelevancies" considered by Mr. Tucker in reaching his opinion. As this Court is fully aware, excessive force cases are extremely factually intensive, especially in cases such as this which address automobiles potentially being used as deadly weapon. Officers are justified in using deadly force in situations where there is a threat of harm that is indeed imminent. Mr. Tucker just disagrees with the conclusion of the Defendants that a reasonable office could conclude that the threat of physical harm was imminent in the present case.

It is completely relevant whether other officers considered deadly force to be necessary in this event. This goes to the heart of objective reasonableness. A thorough analysis and discussion of the objective reasonableness standard in an excessive force case is found in <u>McElroy v. City of Birmingham, Ala.</u>, 2:09-CV-0246-SLB, 2012 WL 4711918 (N.D. Ala. 2012) where the district court relied on Eleventh Circuit and Supreme Court precedent. As the <u>McElroy</u> Court discussed, important in any objective reasonableness analysis is the requirement

that "[t]he reasonableness of the use of force is measured objectively and it is 'judged from the perspective of a **reasonable officer** on the scene . . .' [Emphasis added] Graham, 490 U.S. at 397, 109 S.Ct. 1865; Penley v. Eslinger, 605 F.3d 843, 852 (11th Cir.2010); Crenshaw v. Lister, 556 F.3d 1283, 1290 (11th Cir.2009)." McElroy v. City of Birmingham, Ala., 2:09-CV-0246-SLB, 2012 WL 4711918 (N.D. Ala. 2012).

One of Plaintiffs' central arguments in this case is that Sgt. Carey, who alone shot and killed Neil Southerland, did not act reasonably when confronted with the exact same circumstances that confronted Officer Doherty, Officer Holmquist and Officer Carlson, who each did not believe deadly force was necessary when they arrived on scene prior to Sgt. Carey. **The best evidence of what other officers (including a reasonable officer) would do when confronted with the same circumstances as Sgt. Carey is what the other officers actually did who were there.** No 20/20 hindsight is required to guess at what a reasonable officer would have done. The fact that the other officers on scene did not use deadly force is relevant evidence and should be considered. As will be set forth in further detail in Plaintiffs Response to Defendants' Motions for Summary Judgment, in which the Defendants argue in part that there was no constitutional violation, the facts in this case are disputed and subject to differing inferences.

Lastly in the methodology section of Defendants' Motion, Defendants seem to object to the use of industry standards for officers shooting at individuals in moving vehicles. Obviously, the Defendants used deadly force in this case believing that this was a potentially moving vehicle. In his Affidavit and in his opinion, Mr. Tucker goes further into describing industry standards. This could have been described further had Defendants elected to take the deposition of Mr. Tucker. Industry standards are entirely appropriate to consider in the analysis of excessive

5

force cases and by a "use of force" expert as is discussed in <u>Samples v. City of Atlanta</u>, 316 F.2d 1548 (11th Cir. 1990). In sum, the opinions offered by Mr. Tucker are completely consistent with the framework and contour of the 11th Circuit's opinion and <u>Samples</u>.

### III. Mr. Tucker's testimony will assist the trier of fact

Defendants also incorrectly argue that Tucker's opinion will not assist the trier of fact. To the contrary, his opinions on the proper use of force are admissible. <u>Samples v. City of Atlanta</u>, 316 F.2d 154 (11th Cir. 1990.)

<u>Samples</u> was a 1983 action brought by the parents of a youth who was fatally shot by a police officer. *Id.* at 1550. After the jury return a verdict in favor of the defendants finding that the officer had not used excessive force in the shooting the plaintiffs appealed. *Id.* at 1550. On appeal, the plaintiffs argued that the district court erred in admitting testimony from the defendants' "use of force" expert. *Id.* at 1551. On this point the Eleventh Circuit stated as follows:

> After establishing the witness's extensive qualifications as an expert in the field of proper use of force by law enforcement officers, the defense attorney posed a hypothetical based on the facts already in evidence regarding what Officer Oglesby saw as he approached David Samples on the night of the shooting. The attorney then asked the expert's opinion as to "whether or not it was reasonable for the officer to discharge his firearm when David Samples charged him with a knife." Over the plaintiff's objection, the expert testified that in his opinion Officer Oglesby acted reasonably. We agree with plaintiffs that the literal wording of the question posed tends to call for an answer that would invade the province of the jury, which in this case was to decide the reasonableness of the officer's actions. We find, however, that the questions leading up to this testimony, and the manner in which the expert answered question, properly informed the jury that the expert was testifying regarding prevailing standards in the field of law enforcement. After posing the hypothetical, but before asking the expert's opinion as to the reasonableness of the officer's actions, in the defense questioned the expert regarding the industry standard for judging the appropriate used of force.

*Id.* After the industry standard was explained, the expert then testified in terms of the standard in analyzing the officer's conduct. *Id.* As a result, the court concluded that the admission of such expert testimony was proper. *Id.*

Likewise, in *Kladis v. Brezek*, 823 F.2d 1014 (7th Cir. 1987), also §1983 excessive force case, the plaintiff argued that "the district court erred in allowing a police expert to testify as to the proper level of force to be used by police in various situations." *Id.* at 1019. The plaintiff also claimed that the expert witness' use of a "force chart," which recommended procedures in a case in which a suspect was armed, was unduly prejudicial because the plaintiff had not been armed. *Id.* The court concluded that the expert testimony was admissible and held as follows:

> In this case, the expert witness testified as to his credentials and informed the court that he frequently instructs police officers in the use of force. The district court was well within its discretion in concluding that this testimony provided a reliable basis for the jury to consider whether the defendants had used excessive force against Kladis. The expert witness did discuss procedures and cases in which the police must disarm a suspect. However, the court carefully mitigated any possible prejudice by instructing the jury that this testimony was intended to show the range of possible situations that the police might encounter, and that there was no suggestion that Kladis had used a weapon.

Id.

Similarly, in <u>Davis v. Mason County</u>, 927 F.2d 1473 (9th Cir. 1991, *abrogated on other grounds*, the plaintiff brought a §1983 claim against a county, its sheriff, and several deputies alleging both excessive force by the deputies and municipal liability under §1983 against the sheriff and the county. On appeal, the county argued that the testimony of the plaintiffs' police expert was improper opinion testimony on the question of law *Id.* at 1484. Specifically, the plaintiffs' expert testified that the sheriff "was reckless in his failure to adequately train his deputies, and that there was causal link between this recklessness and the plaintiffs' injuries." *Id.* At 1484-85. The Ninth Circuit held as follows:

> This argument is without merit. Fed.R.Evid. 704 allows expert witnesses to express an opinion on an ultimate issue to be decided by the jury. Moreover Fed.R.Evid. 702 permits expert testimony comparing conduct of parties to the industry standard. The trial court did not abuse its discretion in admitting [the expert's] testimony.

*Id.* at 1484-85 (internal citations omitted).

Applying the foregoing to the instant case, Mr. Tucker's opinions that Sgt. Carey used excessive force will assist the trier of fact. Accordingly, Mr. Tucker's testimony is admissible. See also Burgos-Tantin v. Diaz, 709 F.Supp.2d 115, 117-18, (D.P.R. 2010)(holding plaintiffs could introduce expert opinion in excessive force case that use of force was unreasonable under the circumstances of case); Richman v. Sheahan, 415 F.Supp. 2d 929 (N.D. Ill. 2006)(holding rule concerning expert opinion on ultimate issue did not preclude experts in excessive force case from giving opinions on ultimate issues including sheriff's deputies compliance with or departure from applicable professional standards and the reasonableness of their behavior as measured by those standards).

### IV. Conclusion and Request for Hearing

In sum, Defendants' Motion to Exclude Testimony of Plaintiffs' Expert should be denied because Mr. Tucker is qualified as an expert on law enforcement matters, the methods he employed in reaching his opinions are reliable, and his opinions will assist the trier of fact. If this Honorable Court is inclined to grant Defendants' Motion, Plaintiffs request an evidentiary hearing where Mr. Tucker's opinions and methodology can be further explored, challenged and

tested and any concerns of Court can be satisfied.

                                  Respectfully submitted,

                                  **LAW OFFICES OF FRED TROMBERG**

                                  /s/ Paul E. Bueker
                                  Fred Tromberg, Esquire (FBN: 246514)
                                  Antoinette Burgess, Esquire (FBN: 0059241)
                                  Paul E. Bueker, Esquire (FBN: 189405)
                                  4925 Beach Boulevard
                                  Jacksonville, FL 32207
                                  Telephone: (904) 396-5321
                                  Facsimile: (904) 396-5730
                                  Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

     HEREBY CERTIFY that on this  25th day of February, 2013, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following:  Jon Phillips, Esquire, email: Jphillips@coj.net, 117 West Duval Street, Suite 480, Jacksonville, Florida 32202; and to Paul Daragjati, Esquire and Phil Vogelsang, Esquire, email: pdaragjati@fop530.com and pvogelsang@fop530.com Office of General Counsel Fraternal Order of Police Building, 5530 Beach Boulevard, Jacksonville, Florida  32207-5161.

                                    /s/ Paul E. Bueker
                                    Paul E. Bueker, Esquire