# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DONALD L. SOUTHERLAND and
DENISE I. GONZALES,

        Plaintiffs,

vs.                                                    Case No. 3:11-cv-1193-J-37MCR

JIM T. CAREY; JOHN RUTHERFORD;
and CITY OF JACKSONVILLE,

        Defendants.

## ORDER

This cause is before the Court on the following:

1. Defendant Jim T. Carey's Motion for Summary Judgment with Incorporated Memorandum of Law (Doc. 18), filed February 4, 2013;

2. Defendant[s] [John Rutherford and] City of Jacksonville's Motion for Final Summary Judgment (Doc. 19), filed February 4, 2013;

3. Defendants' Daubert Motion to Exclude Testimony of Plaintiffs' Expert (Mel Tucker) (Doc. 21), filed February 4, 2013;

4. Plaintiffs' Response to Defendants' Daubert Motion to Exclude Testimony of Plaintiff's Expert (Mel Tucker) (Doc. 26), filed February 25, 2013;

5. Plaintiffs' Response to the Motions for Summary Judgment of Defendants Jim T. Carey, City of Jacksonville and John Rutherford (Doc. 31), filed March 6, 2013;

6. Defendant Jim T. Carey's Reply to Plaintiffs' Response to Defendants' Motions for Summary Judgment (Doc. 38), filed March 23, 2013;

7. Reply to Plaintiffs' Response to Motion for Summary Judgment filed by Sheriff Rutherford and the City (Doc. 41), filed March 25, 2013;

8. Plaintiffs' Motion to Strike Defendant City's Late Disclosure of New Expert Evidence and Opinions (Doc. 42), filed April 12, 2013; and

9. City of Jacksonville's Memorandum in Opposition to Plaintiff's Motion to Strike Defendant City's Disclosure of New Expert Evidence and Opinions (Doc. 43), filed April 29, 2013.

Upon consideration, the Court hereby grants Defendants' motions for summary judgment, for the reasons set forth below.

## BACKGROUND

At approximately 2:45 a.m. on December 14, 2009, a Jacksonville Sheriff's Office radio dispatcher advised officers that an act of criminal mischief had been committed and that the suspect was driving a truck pulling a trailer. (Carey Aff., Doc. 18-1, ¶ 5; Doherty Dep., Doc. 18-4, 27:9–13, 55:14–18.) Officers Peter Doherty and Robert Holmquist, driving separate police cars, spotted Neil Southerland's vehicle, which matched the description. (Doherty Dep., 55:19–22, 56:18–20; Holmquist Dep., Doc. 18-6, 32:8–14.) Officers Doherty and Holmquist approached Southerland's vehicle and activated their lights. (Doherty Dep., 57:15–58:1; Holmquist Dep., 32:15–17.) Kristy Halstead, a civilian ride-along observer, was in the car with Officer Doherty. (Doherty Dep., 30:22–31:15.)

Southerland did not stop, and Officers Doherty and Holmquist pursued him.[1] (Doc. 33-1, p. 1.) From his driving behavior, Southerland appeared to be intoxicated.

---

[1] It was not a high-speed pursuit, as Southerland was going five to ten miles per hour over the speed limit. (Doc. 33-1, p. 1; Doherty Dep., 63:1–6.)

(Doherty Dep., 59:19–22; Carey Dep., Doc. 18-2, 46:23; Response to Resistance Board Video, Doc. 20, Ex. 2, 27:43–28:17, 1:15:40–1:16:00 [hereinafter Video].) At one point during the pursuit when Officer Doherty was behind Southerland, Southerland backed his trailer into Officer Doherty's car and then continued forward. (Doc. 33-1, p. 1; Doherty Dep., 65:20–25.) Officer Doherty was concerned that Southerland would hit someone, and continued pursuing him. (Doherty Dep., 68:9–22; Video, 41:14–33.) Sergeant Jim Carey then joined the pursuit. (Carey Aff., ¶ 8.) Southerland again backed his trailer into Officer Doherty's car, this time with such force that the trailer became stuck on Officer Doherty's car. (Doc. 33-1, p. 1.) Southerland's truck and Officer Doherty's car were stopped. (Doherty Dep., 73:16–20.)

Officer Doherty exited his car and attempted to extract Southerland from the truck. (Doherty Dep., 75:10–13; Holmquist Dep., 44:17–45:3.) Officer Doherty yelled at Southerland to get out of the vehicle, but Southerland ignored him and continued to rev the engine. (Doherty Dep., 83:1–6.) Officer Doherty broke the driver's side window and grabbed Southerland. (*Id.* at 83:7–10.) Officer Holmquist came up next to Officer Doherty and assisted him in attempting to extract Southerland. (*Id.* at 84:9–23; Holmquist Dep., 49:8–14.) At some point, Officer William Carlson arrived on the scene. (Carlson Dep., Doc. 18-3, 21:15–20.)

Sergeant Carey radioed before exiting his squad car, "Take him out, take him out with a gun" (Video, 12:56–58; Carey Aff., ¶ 14), but neither Officer Doherty nor Officer Holmquist heard that transmission. (Doherty Dep., 87:23–88:1; Holmquist Dep., 54:23–55:6.) After exiting his vehicle, Sergeant Carey yelled at Southerland, "Get out. Stop revving the engine. Turn the car off. Get your hands up. Get out." (Haberman Dep., Doc. 18-5, 43:14–19; *see also* Carey Aff., ¶ 15; Carey Dep., 63:17–19; Holmquist Dep.,

3

56:4–17 (stating that Sergeant Carey gave Southerland "multiple, loud, verbal warnings to . . . stop his action, turn the car off, get out of the vehicle"); Video, 1:19:37–57 (Officer Carlson stating that Sergeant Carey "repeat[ed] commands [to Southerland] over and over and over").) Officer Doherty pulled up the lock on the truck door and the door opened. (Doherty Dep., 87:8–11.) Sergeant Carey yelled, "Disengage," and Officers Doherty and Holmquist backed away from the vehicle. (*Id.* at 89:6–19; Holmquist Dep., 54:23–25.) Sergeant Carey discharged his firearm, firing shots into Southerland and his vehicle. (Doherty Dep., 89:20–22.) Southerland died from the gunshot wounds. (Doc. 20-4, p. 12.) Halstead, the civilian observer, was in the passenger's seat of Officer Doherty's car during the entire incident. (Halstead Dep., Doc. 20-12, 22:21–23, 24:1–2.)

Plaintiffs, representatives of Southerland's estate, brought suit against Sergeant Carey in his individual capacity, the City of Jacksonville, and Sheriff John Rutherford in his official capacity. (Doc. 1.) Plaintiffs bring unreasonable seizure, substantive due process, and negligence claims. (*Id.*) Defendants moved for summary judgment. (Docs. 18, 19.) Plaintiffs opposed. (Doc. 31.) On May 1, 2013, the Court held a hearing on this matter. (Doc. 40.)

**STANDARDS**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Materiality of the facts depends on the substantive law applicable to the case. *See id.* To defeat a motion for summary judgment, the nonmoving party must "go beyond the pleadings, and present

affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). "When conducting a qualified immunity analysis, district courts must take the facts in the light most favorable to the party asserting the injury." *Robinson v. Arrugueta*, 415 F.3d 1252, 1257 (11th Cir. 2005). This construction "eliminates all issues of fact" such that "the court has the plaintiff's best case before it." *Id.*

**DISCUSSION**

1. **Unreasonable Seizure**

Plaintiffs contend that on these facts the use of deadly force was an unreasonable seizure under the Fourth Amendment[2] and bring claims pursuant to 42 U.S.C. § 1983 against Sergeant Carey, the City, and Sheriff Rutherford. (Doc. 1, ¶¶ 27–37.)

   a. **Sergeant Carey (Count I)**

Sergeant Carey responds that the use of deadly force was objectively reasonable in light of the events of the evening and moves for summary judgment on the ground of qualified immunity. (Doc. 18, pp. 16–20.)

   i. **Qualified Immunity**

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The entitlement is an immunity from suit rather

---

[2] Plaintiffs reference the Fourteenth Amendment in their unreasonable seizure claims. (Doc. 1, ¶¶ 28, 32.) The Court understands Plaintiff to invoke the Fourteenth Amendment for its purpose in making the Fourth Amendment applicable to the states. *See Payton v. New York*, 445 U.S. 573, 576 (1980). The Court thus considers Plaintiff to bring Fourth Amendment unreasonable seizure claims only.

than a mere defense to liability . . . [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. . . . Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Sergeant Carey was acting within his discretionary authority as a police officer when he seized Southerland. *See McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009). Thus, the burden shifts to Plaintiffs to show that Sergeant Carey is not entitled to qualified immunity.

The first question is whether the facts, viewed in the light most favorable to Plaintiffs, demonstrate that Sergeant Carey's conduct violated a constitutional right. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If there was no violation, the inquiry ends and Sergeant Carey is entitled to qualified immunity; if there was a violation, then the next inquiry is whether the violated right was clearly established. *Id.* The Court is "permitted to exercise [its] sound discretion" in determining which prong to address first. *Id.* at 235.

### ii. Fourth Amendment

Plaintiffs allege that Sergeant Carey violated Southerland's Fourth Amendment right to be free from unreasonable seizures. (Doc. 1, ¶ 28.) The use of deadly force is reasonable when an officer: "(1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others . . . ; (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has

given some warning about the possible use of deadly force, if feasible." *Vaughn v. Cox*, 343 F.3d 1323, 1329–30 (11th Cir. 2003) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985); *Acoff v. Abston*, 762 F.2d 1543, 1547 (11th Cir. 1985)) (internal quotation marks omitted). The reasonableness inquiry is an objective one: "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989).

The U.S. Court of Appeals for the Eleventh Circuit has cautioned that "we are not to view the [reasonableness of a particular use of force] as judges from the comfort and safety of our chambers." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1333–34 (11th Cir. 2004). Rather than apply "the 20/20 vision of hindsight," *Graham*, 490 U.S. at 396, the Court "must see the situation through the eyes of the officer on the scene who is hampered by incomplete information and forced to make a split-second decision between action and inaction in circumstances where inaction could prove fatal." *Crosby*, 394 F.3d at 1334 (11th Cir. 2004). Thus, the bar set by precedent is high even where, as here, non-lethal options seem to have been available when viewed in retrospect with clear eyes from the sanctum of the Court.

### iii. Application

Here, the Plaintiffs have failed to establish that Sergeant Carey's belief that Southerland posed a risk of serious physical injury to the officers, ride-along civilian Halstead, or the public was objectively unreasonable. After the officers signaled for Southerland to pull over, he willfully ignored them and chose to flee. Southerland was clearly impaired and Sergeant Carey, who had listened to the radio transmission before joining the pursuit after Southerland backed into Officer Doherty's car the first time,

stated that he "assumed [Southerland] was [driving under the influence] at the time" of the incident. (Carey Dep., 43:2–44:3, 49:23.) Sergeant Carey also heard another officer say over the radio that Southerland was "weaving" across lanes. (Video, 1:37:53–55.) *See Terrell v. Smith*, 668 F.3d 1244, 1252 (11th Cir. 2012) (noting that the "collective knowledge" of investigating officers may be imputed to each other). The pursuit only ended because Southerland backed into Officer Doherty's police car for a *second* time, this time with such force that the trailer became lodged on Officer Doherty's car. To be certain to get the Plaintiff's best case, the Court accepts for the purposes of considering the qualified immunity defense that the trailer was stuck on the push bumper of Officer Doherty's car and that the trailer was not moving.[3] *Robinson v. Arrugueta*, 415 F.3d

---

[3] There is conflicting evidence as to: (1) whether the trailer was stuck on the hood or the push bumper of Officer Doherty's car; and (2) the extent to which the trailer was moving while stuck. Plaintiffs aver that the trailer was completely immobile on the push bumper. (Doc. 31, pp. 5–7.) They contend that because the trailer was down on the bumper, Halstead—who was in the passenger seat of Doherty's car—was not in danger of the trailer injuring her through the windshield. (*Id.* at 11–14.) Further, they submit that because the trailer was not moving, it was clear that it was entirely stuck and that Southerland posed no danger to anyone. (*Id.* at 14–15.)

A photograph of the scene taken after the incident shows the trailer on the push bumper of Officer Doherty's car and depicts broken glass from the driver-side window on the ground directly below the window. (Doc. 32, Plaintiff's Ex. 4.) This evidence suggests that at the time that Officer Doherty broke the window, the trailer was already down on the push bumper. Additionally, Sergeant Adam Haberman testified that Southerland "kept revving the engine" but that the trailer did not move, suggesting that it was firmly stuck throughout the incident. (Haberman Dep., 39:11–40:3.)

However, other evidence supports the notion that the trailer was up on the hood of the car for at least some portions of the incident and was moving. (*See* Carey Aff., ¶ 12 (the "trailer was moving back and forth getting closer to the windshield of Doherty's vehicle"); Halstead Dep., 21:17–20 (the trailer was up on the hood the entire time); Doherty Dep., 76:19–25, 78:25–79:6 (the trailer was "wiggling" on the hood and "going back and forth a little").)

The Court construes the conflicting evidence in favor of Plaintiffs and assumes that the trailer was stuck down on the push bumper and was not moving at the time that Sergeant Carey discharged his firearm. What is undisputed is that Southerland was revving his engine and the tires were smoking for the duration of the incident. (Holmquist Dep., 39:15–17; Carey Aff., ¶ 17; Carlson Dep., 25:23–26:1.)

1252, 1257 (11th Cir. 2005) (stating that when conducting a qualified immunity analysis, the court must take the facts in the light most favorable to the plaintiff to "eliminat[e] all issues of fact"); *Penley v. Eslinger*, 605 F.3d 843, 848–49 (11th Cir. 2010) (noting that "[a]t the summary judgment stage, . . . the reasonableness of [the officer's] actions . . . is a pure question of law" (citation and internal quotation marks omitted)). Nevertheless, the officers on the scene had no way of knowing how stable the trailer was—at any moment, the trailer could have become unstuck.[4] *See Whitaker v. Pima Cnty.*, 640 F. Supp. 2d 1095, 1104–05 (D. Ariz. 2009) (finding that the use of deadly force was reasonable where the suspect "had been driving recklessly, had struck [the officer's] vehicle with his pickup truck, continued to rev his engine, and [the officer] was unable to determine if the pickup truck was permanently immobile; [the officer's] perception was that if the truck gained traction and broke free, [the suspect] posed a threat of serious physical injury to officers and civilians"). Also, the officers had no way of knowing if the trailer would move in unpredictable ways if it became dislodged, potentially injuring someone. Nor did they have any way of knowing what Southerland would do once he was loose. He might have tried to back into Officer Doherty's car again, endangering the civilian sitting mere feet from the trailer inside the car; he might have tried to run over the officers on the scene; or he might have fled, posing a danger to the general public given his perceived intoxication and prior dangerous driving. Plaintiffs argued at the

---

[4] There is some evidence that supports that the trailer was, indeed, completely stuck on Officer Doherty's car. (*See* Reckamp Report, Doc. 20-10, p. 4.) However, this evidence, based on analyses performed after the incident, was made "with the 20/20 vision of hindsight" and is not necessarily what a reasonable officer on the scene would have perceived to be the case. *See Graham*, 490 U.S. at 396; *Whitaker v. Pima Cnty.*, 640 F. Supp. 2d 1095, 1104 (D. Ariz. 2009) (stating that whether the suspect's vehicle was actually stuck is not relevant to a determination of whether the officer had probable cause to believe at the time that the suspect posed a threat of serious physical harm).

hearing that "what if" scenarios based upon what might have happened are not relevant to the question of whether the Southerland posed a danger at the time of the shooting.[5] Plaintiffs are incorrect, as what might have happened, based upon what was known about his prior behavior, necessarily factors into a calculation of the danger that he posed. *See Long v. Slaton*, 508 F.3d 576, 581, n.7 (11th Cir. 2007).

Sergeant Carey knew that Southerland was not docile and appeared intoxicated. He led police in a pursuit and drove dangerously during that pursuit. He backed into Officer Doherty's car on two occasions. He ignored repeated commands to cooperate with police. He continued to rev the engine until the truck's tires were smoking. Southerland was, in other words, a loose cannon who telegraphed that he was not willing to peacefully cooperate but instead wished to break his truck and trailer free— with potential results of harming others with the deadly weapon that was his vehicle. *See Pace v. Capobianco*, 283 F.3d 1275, 1281–82 (11th Cir. 2002) (concluding that a suspect would have appeared gravely dangerous to reasonable police officers where the suspect had aggressively used his automobile during a pursuit with police and did not get out of the car or turn off the engine once police surrounded him);[6] *Montoute v. Carr*, 114 F.3d 181, 185 (11th Cir. 1997) ("[The suspect's] unexplained refusal to obey the repeated orders . . . provided an additional basis for inferring that he presented a risk of serious physical injury to an officer or someone else."); *see also McCullough*, 559 F.3d at 1206–07 ("We have had occasion to review many excessive force claims

---

[5] A certified transcript of the hearing is not available at this time.
[6] In *Pace*, the Eleventh Circuit noted that at most "a very few seconds" had passed between the time that the suspect stopped and the time that he was shot. 283 F.3d at 1282. While more time may have passed in the instant case, because the trailer could have come dislodged at any moment, a reasonable officer would have found Southerland to pose an imminent danger similar to the situation in *Pace*.

against officers in the context of qualified immunity determinations where the decedent was driving an automobile at the time deadly force was used. . . . We have . . . consistently upheld an officer's use of force and granted qualified immunity in cases where the decedent used or threatened to use his car as a weapon to endanger officers or civilians immediately preceding the officer's use of deadly force."). When Officer Doherty finally unlocked the truck door and swung it open—in the midst of a "tense, uncertain, and rapidly evolving" situation, *Graham*, 490 U.S. at 397—Sergeant Carey took his shots at Southerland. Neither Officer Doherty nor Officer Holmquist chose to use deadly force.[7] However, Sergeant Carey, who had a more global perspective of the scene in that he was not right in the middle of the struggle with Southerland, thought it necessary.[8] The Court cannot say that a reasonable officer confronted with the same circumstances would not have agreed that Southerland posed a threat of serious danger to the officers, the civilian in Officer Doherty's car, and the public. *See Garner*, 471 U.S. at 8–9 (noting that "the question [is] whether the totality of the circumstances justif[y] . . . a seizure").[9]

---

[7] Officer Doherty testified that he knew that the officers could have used deadly force "from the get-go," but that he tried to extract Southerland from the vehicle so that they would not have to. (Doherty Dep., 50:21–25.) Officer Holmquist testified that he did not think that it was necessary to shoot Southerland. (Holmquist Dep., 59:25–60:3.)

[8] Sergeant Haberman and Officer Carlson were also removed from the immediate struggle. When asked if he thought the incident was a "deadly-force-type-situation," Sergeant Haberman responded that he felt it was "an elevated situation," which he later defined as a situation that had moved from a misdemeanor to a felony. (Haberman Dep., 26:15–21, 27:24–28:3.) Officer Carlson testified that he felt that it was a deadly force situation because Southerland posed a danger of "great bodily injury" to others. (Carlson Dep., 34:7–35:2.)

[9] A reasonable officer would have believed that deadly force was necessary to prevent Southerland's escape and such force was only implemented post-warning. *See Vaughn*, 343 F.3d at 1329–30. In *Pruitt v. City of Montgomery*, the Eleventh Circuit declined to decide whether a literal warning to the effect of "halt, or I'll shoot" was required or a lesser warning of "halt, police" was sufficient. 771 F.2d 1475, 1484 n.18

With the clarity of hindsight, it is likely that Southerland was stuck and going nowhere. A cooler head and a few more seconds allotted to Officers Doherty and Holmquist may well have led to a successful extrication of Southerland from the vehicle and averted the crisis. While that may be the case, precedent makes clear that "[g]overnment officials are not required to err on the side of caution when it comes to avoiding constitutional violations." *Crosby*, 394 F.3d at 1334 (quoting *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1030 n.8 (11th Cir. 2001) (en banc)) (internal quotation marks omitted). Indeed, an officer may be reasonable even if he is mistaken, as Sergeant Carey may have been. *See Clark v. Evans*, 840 F.2d 876, 881 (11th Cir. 1988). "Reconsideration will nearly always reveal that something different could have been done if the officer knew the future before it occurred." *Menuel v. City of Atlanta*, 25 F.3d 990, 997 (11th Cir. 1994) (quoting *Plakas v. Drinski*, 19 F.3d 1143, 1150 (7th Cir. 1994)) (internal quotation marks omitted). The loss of life is tragic, and when viewed in retrospect it is it possible that non-lethal force may have eventually diffused the situation. However, the Court will not second-guess Sergeant Carey's decision given the imminent danger that Southerland posed at the moment of the shooting. As such, Sergeant Carey is entitled to qualified immunity. His motion for summary judgment is due to be granted as to Count I.

### b. The City and Sheriff Rutherford (Count II)

"Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of*

---

(11th Cir. 1985). Here, the content of the warnings and the number and frequency of the warnings put Southerland on constructive notice that Sergeant Carey might use deadly force if he did not cooperate. *Cf. Pace*, 283 F.3d at 1278, 1282 (finding no constitutional deprivation where officers yelled "get out of the car" before one of them fatally shot the suspect).

*Soc. Servs.*, 436 U.S. 658, 691 (1978). Because Sergeant Carey did not commit an unreasonable seizure—that is, Southerland was not subject to a constitutional deprivation—neither the City nor Sheriff Rutherford may be held liable. *See Penley*, 605 F.3d at 854–55 (holding that a sheriff sued in his official capacity could not be liable under § 1983 where there was no deprivation of rights); *see also Jiron v. City of Lakewood*, 392 F.3d 410, 419 n.8 (10th Cir. 2004) ("[W]hen a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation—i.e., the first step of the qualified immunity analysis—a finding of qualified immunity does preclude the imposition of municipal liability" (emphasis omitted)). Accordingly, the City and Sheriff Rutherford's motion for summary judgment is due to be granted as to Count II.

   **2. Substantive Due Process (Counts III and IV)**

Plaintiffs also bring 42 U.S.C. § 1983 substantive due process claims against Sergeant Carey, the City, and Sheriff Rutherford. (Doc. 1, ¶¶ 38–48.) "[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive government conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham*, 490 U.S. at 395 (emphasis omitted). As such, the substantive due process claims fail because they are properly brought under the Fourth Amendment (as was done in Counts I and II), compelling the result that the motions for summary judgment are due to be granted as

to Counts III and IV.

### 3. Negligence (Counts V and VI)

Finally, Plaintiffs bring negligence claims against both Sergeant Carey and the City (Doc. 1, ¶¶ 49–58) under Florida's wrongful death statute, which provides that a decedent's survivor may recover damages from the person who negligently caused the decedent's death, Fla. Stat. § 768.16 *et seq*.

"[T]here is no cause of action for the negligent use of force. . . . [I]t is inapposite to allege the negligent commission of an intentional tort, such as the use of excessive force." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1294 (11th Cir. 2009) (citing *City of Miami v. Ross*, 695 So. 2d 486, 487 (Fla. 3d DCA 1997)); *see also City of Miami v. Sanders*, 672 So. 2d 46, 48 (Fla. 3d DCA 1996) ("[T]he concept of a cause of action for 'negligent' excessive force is an oxymoron."). Therefore, Plaintiffs' claims fail.

Further, because Sergeant Carey's use of force was justifiable to prevent harm, Florida law immunizes him from civil suit. Fla. Stat. § 776.012; *Penley*, 605 F.3d at 855. As such, the negligent wrongful death claims fail and the motions for summary judgment are due to be granted as to Counts V and VI.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Defendant Jim T. Carey's Motion for Summary Judgment with Incorporated Memorandum of Law (Doc. 18) is **GRANTED**.

2. Defendant[s] [John Rutherford and] City of Jacksonville's Motion for Final Summary Judgment (Doc. 19) is **GRANTED**.

3. Defendants' Daubert Motion to Exclude Testimony of Plaintiffs' Expert (Mel Tucker) (Doc. 21) is **DENIED AS MOOT**.

4. Plaintiffs' Motion to Strike Defendant City's Late Disclosure of New Expert Evidence and Opinions (Doc. 42) is **DENIED AS MOOT**.

5. All remaining pending motions are **TERMINATED** and all upcoming hearing and trial dates are **CANCELLED**.

6. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiffs. Plaintiffs shall take nothing on their claims. Defendants are awarded costs.

7. The Clerk is **DIRECTED** to close this case.

**DONE AND ORDERED** in Chambers in Jacksonville, Florida, on May 9, 2013.

*[signature]*

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record